# SUPREME COURT OF VIRGINIA ET AL. *v.* FRIEDMAN

No. 87–399.   Argued March 21, 1988—Decided June 20, 1988

KENNEDY, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. REHNQUIST, C. J., filed a dissenting opinion, in which SCALIA, J., joined, *post*, p. 70.

*Gregory E. Lucyk*, Assistant Attorney General of Virginia, argued the cause for appellants. With him on the briefs were *Mary Sue Terry*, Attorney General, *Gail Starling Marshall*, Deputy Attorney General, and *William H. Hauser*, Senior Assistant Attorney General.

*Cornish F. Hitchcock* argued the cause for appellee. With him on the brief were *Alan B. Morrison* and *John J. McLaughlin.**

---

*A brief of *amici curiae* urging reversal was filed for the State of Wyoming et al. by *Joseph B. Meyer*, Attorney General, and *Mary B. Guthrie*, Senior Assistant Attorney General, joined by the Attorneys General for

JUSTICE KENNEDY delivered the opinion of the Court.

Qualified lawyers admitted to practice in other States may be admitted to the Virginia Bar "on motion," that is, without taking the bar examination which Virginia otherwise requires. The State conditions such admission on a showing, among other matters, that the applicant is a permanent resident of Virginia. The question for decision is whether this residency requirement violates the Privileges and Immunities Clause of the United States Constitution, Art. IV, § 2, cl. 1. We hold that it does.

I

Myrna E. Friedman was admitted to the Illinois Bar by examination in 1977 and to the District of Columbia Bar by reciprocity in 1980. From 1977 to 1981, she was employed by the Department of the Navy in Arlington, Virginia, as a civilian attorney, and from 1982 until 1986, she was an attorney in private practice in Washington, D. C. In January 1986, she became associate general counsel for ERC International, Inc., a Delaware corporation. Friedman practices and maintains her offices at the company's principal place of business in Vienna, Virginia. Her duties at ERC International include drafting contracts and advising her employer and its subsidiaries on matters of Virginia law.

From 1977 to early 1986, Friedman lived in Virginia. In February 1986, however, she married and moved to her husband's home in Cheverly, Maryland. In June 1986, Friedman applied for admission to the Virginia Bar on motion.

The applicable rule, promulgated by the Supreme Court of Virginia pursuant to statute, is Rule 1A:1. The Rule permits admission on motion of attorneys who are licensed

their respective States as follows: *Neil F. Hartigan* of Illinois, *Thomas J. Miller* of Iowa, and *Anthony J. Celebrezze, Jr.*, of Ohio.

Briefs of *amici curiae* urging affirmance were filed for the American Corporate Counsel Association by *Lawrence A. Salibra II;* and for the New York State Bar Association by *Maryann Saccomando Freedman, Monroe H. Freedman,* and *Ronald J. Levine.*

to practice in another jurisdiction, provided the other juris-
diction admits Virginia attorneys without examination. The
applicant must have been licensed for at least five years
and the Virginia Supreme Court must determine that the
applicant:

"(a) Is a proper person to practice law.

"(b) Has made such progress in the practice of law
that it would be unreasonable to require him to take an
examination.

"(c) Has become a permanent resident of the Com-
monwealth.

"(d) Intends to practice full time as a member of the
Virginia bar."

In a letter accompanying her application, Friedman alerted
the Clerk of the Virginia Supreme Court to her change of res-
idence, but argued that her application should nevertheless
be granted. Friedman gave assurance that she would be en-
gaged full-time in the practice of law in Virginia, that she
would be available for service of process and court appear-
ances, and that she would keep informed of local rules. She
also asserted that "there appears to be no reason to discrim-
inate against my petition as a nonresident for admission to
the Bar on motion," that her circumstances fit within the
purview of this Court's decision in *Supreme Court of New
Hampshire* v. *Piper*, 470 U. S. 274 (1985), and that accord-
ingly she was entitled to admission under the Privileges and
Immunities Clause of the Constitution, Art. IV, § 2, cl. 1.
See App. 34–35.

The Clerk wrote Friedman that her request had been de-
nied. He explained that because Friedman was no longer a
permanent resident of the Commonwealth of Virginia, she
was not eligible for admission to the Virginia Bar pursuant to
Rule 1A:1. He added that the court had concluded that our
decision in *Piper*, which invalidated a residency requirement
imposed on lawyers who had passed a State's bar examina-
tion, was "not applicable" to the "discretionary requirement

in Rule 1A:1 of residence as a condition of admission by reciprocity." App. 51–52.

Friedman then commenced this action, against the Supreme Court of Virginia and its Clerk, in the United States District Court for the Eastern District of Virginia. She alleged that the residency requirement of Rule 1A:1 violated the Privileges and Immunities Clause. The District Court entered summary judgment in Friedman's favor, holding that the requirement of residency for admission without examination violates the Clause.*

The Court of Appeals for the Fourth Circuit unanimously affirmed. 822 F. 2d 423 (1987). The court first rejected appellants' threshold contention that the Privileges and Immunities Clause was not implicated by the residency requirement of Rule 1A:1 because the Rule did not absolutely prohibit the practice of law in Virginia by nonresidents. *Id.*, at 427–428. Turning to the justifications offered for the Rule, the court rejected, as foreclosed by *Piper,* the theory that the different treatment accorded to nonresidents could be justified by the State's interest in enhancing the quality of legal practitioners. The court was also unpersuaded by appellant's contention that the residency requirement promoted compliance with the Rule's full-time practice requirement, an argument the court characterized as an unsupported assertion that "residents are more likely to honor their commitments to practice full-time in Virginia than are nonresidents." *Id.*, at 429. Thus, the court concluded that there was no substantial reason for the Rule's discrimination against nonresidents, and that the discrimination did not bear

---

*The District Court did not address Friedman's claims that the residency requirement of Rule 1A:1 also violates the Commerce Clause and the Equal Protection Clause of the Fourteenth Amendment. The Court of Appeals did not pass on these contentions either, and our resolution of Friedman's claim that the residency requirement violates the Privileges and Immunities Clause makes it unnecessary for us to reach them.

a substantial relation to the objectives proffered by appellants.

The Supreme Court of Virginia and its Clerk filed a timely notice of appeal. We noted probable jurisdiction, 484 U. S. 923 (1987), and we now affirm.

## II

Article IV, § 2, cl. 1, of the Constitution provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The provision was designed "to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *Paul* v. *Virginia*, 8 Wall. 168, 180 (1869). See also *Toomer* v. *Witsell*, 334 U. S. 385, 395 (1948) (the Privileges and Immunities Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy"). The Clause "thus establishes a norm of comity without specifying the particular subjects as to which citizens of one State coming within the jurisdiction of another are guaranteed equality of treatment." *Austin* v. *New Hampshire*, 420 U. S. 656, 660 (1975).

While the Privileges and Immunities Clause cites the term "Citizens," for analytic purposes citizenship and residency are essentially interchangeable. See *United Building & Construction Trades Council* v. *Mayor and Council of Camden*, 465 U. S. 208, 216 (1984). When examining claims that a citizenship or residency classification offends privileges and immunities protections, we undertake a two-step inquiry. First, the activity in question must be "'sufficiently basic to the livelihood of the Nation' . . . as to fall within the purview of the Privileges and Immunities Clause . . . ." *Id.*, at 221–222, quoting *Baldwin* v. *Montana Fish & Game Comm'n*, 436 U. S. 371, 388 (1978). For it is "'[o]nly with respect to those "privileges" and "immunities" bearing on the vitality of the Nation as a single entity' that a State must ac-

cord residents and nonresidents equal treatment." *Supreme Court of New Hampshire* v. *Piper,* 470 U. S., at 279, quoting *Baldwin, supra,* at 383. Second, if the challenged restriction deprives nonresidents of a protected privilege, we will invalidate it only if we conclude that the restriction is not closely related to the advancement of a substantial state interest. *Piper, supra,* at 284. Appellants assert that the residency requirement offends neither part of this test. We disagree.

## A

Appellants concede, as they must, that our decision in *Piper* establishes that a nonresident who takes and passes an examination prescribed by the State, and who otherwise is qualified for the practice of law, has an interest in practicing law that is protected by the Privileges and Immunities Clause. Appellants contend, however, that the discretionary admission provided for by Rule 1A:1 is not a privilege protected by the Clause for two reasons. First, appellants argue that the bar examination "serves as an adequate, alternative means of gaining admission to the bar." Brief for Appellants 20. In appellants' view, "[s]o long as any applicant may gain admission to a State's bar, without regard to residence, by passing the bar examination," *id.,* at 21, the State cannot be said to have discriminated against nonresidents "as a matter of fundamental concern." *Id.,* at 19. Second, appellants argue that the right to admission on motion is not within the purview of the Clause because, without offense to the Constitution, the State could require all bar applicants to pass an examination. Neither argument is persuasive.

We cannot accept appellants' first theory because it is quite inconsistent with our precedents. We reaffirmed in *Piper* the well-settled principle that "'one of the privileges which the Clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State.'" *Piper, supra,* at 280, quoting *Toomer* v. *Witsell, supra,* at 396. See also

*United Building & Construction Trades Council, supra,* at 219 ("Certainly, the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause"). After reviewing our precedents, we explicitly held that the practice of law, like other occupations considered in those cases, is sufficiently basic to the national economy to be deemed a privilege protected by the Clause. See *Piper, supra,* at 280–281. The clear import of *Piper* is that the Clause is implicated whenever, as is the case here, a State does not permit qualified nonresidents to practice law within its borders on terms of substantial equality with its own residents.

Nothing in our precedents, moreover, supports the contention that the Privileges and Immunities Clause does not reach a State's discrimination against nonresidents when such discrimination does not result in their total exclusion from the State. In *Ward* v. *Maryland,* 12 Wall. 418 (1871), for example, the Court invalidated a statute under which residents paid an annual fee of $12 to $150 for a license to trade foreign goods, while nonresidents were required to pay $300. Similarly, in *Toomer, supra,* the Court held that nonresident fishermen could not be required to pay a license fee 100 times the fee charged to residents. In *Hicklin* v. *Orbeck,* 437 U. S. 518 (1978), the Court invalidated a statute requiring that residents be hired in preference to nonresidents for all positions related to the development of the State's oil and gas resources. Indeed, as the Court of Appeals correctly noted, the New Hampshire rule struck down in *Piper* did not result in the total exclusion of nonresidents from the practice of law in that State. 822 F. 2d, at 427 (citing *Piper, supra,* at 277, n. 2).

Further, we find appellants' second theory—that Virginia could constitutionally require that all applicants to its bar take and pass an examination—quite irrelevant to the question whether the Clause is applicable in the circumstances of this case. A State's abstract authority to require from

resident and nonresident alike that which it has chosen to demand from the nonresident alone has never been held to shield the discriminatory distinction from the reach of the Privileges and Immunities Clause. Thus, the applicability of the Clause to the present case no more turns on the legality *vel non* of an examination requirement than it turned on the inherent reasonableness of the fees charged to nonresidents in *Toomer* and *Ward.* The issue instead is whether the State has burdened the right to practice law, a privilege protected by the Privileges and Immunities Clause, by discriminating among otherwise equally qualified applicants solely on the basis of citizenship or residency. We conclude it has.

## B

Our conclusion that the residence requirement burdens a privilege protected by the Privileges and Immunities Clause does not conclude the matter, of course; for we repeatedly have recognized that the Clause, like other constitutional provisions, is not an absolute. See, *e. g., Piper, supra,* at 284; *United Building & Construction Trades Council,* 465 U. S., at 222; *Toomer,* 334 U. S., at 396. The Clause does not preclude disparity in treatment where substantial reasons exist for the discrimination and the degree of discrimination bears a close relation to such reasons. See *United Building & Construction Trades Council, supra,* at 222. In deciding whether the degree of discrimination bears a sufficiently close relation to the reasons proffered by the State, the Court has considered whether, within the full panoply of legislative choices otherwise available to the State, there exist alternative means of furthering the State's purpose without implicating constitutional concerns. See *Piper, supra,* at 284.

Appellants offer two principal justifications for the Rule's requirement that applicants seeking admission on motion reside within the Commonwealth of Virginia. First, they contend that the residence requirement assures, in tandem with

the full-time practice requirement, that attorneys admitted on motion will have the same commitment to service and familiarity with Virginia law that is possessed by applicants securing admission upon examination.  Attorneys admitted on motion, appellants argue, have "no personal investment" in the jurisdiction; consequently, they "are entitled to no presumption that they will willingly and actively participate in bar activities and obligations, or fulfill their public service responsibilities to the State's client community."  Brief for Appellants 26–27.  Second, appellants argue that the residency requirement facilitates enforcement of the full-time practice requirement of Rule 1A:1.  We find each of these justifications insufficient to meet the State's burden of showing that the discrimination is warranted by a substantial state objective and closely drawn to its achievement.

We acknowledge that a bar examination is one method of assuring that the admitted attorney has a stake in his or her professional licensure and a concomitant interest in the integrity and standards of the bar.  A bar examination, as we know judicially and from our own experience, is not a casual or lighthearted exercise.  The question, however, is whether lawyers who are admitted in other States and seek admission in Virginia are less likely to respect the bar and further its interests solely because they are nonresidents.  We cannot say this is the case.  While *Piper* relied on an examination requirement as an indicium of the nonresident's commitment to the bar and to the State's legal profession, see *Piper*, 470 U. S., at 285, it does not follow that when the State waives the examination it may make a distinction between residents and nonresidents.

Friedman's case proves the point.  She earns her living working as an attorney in Virginia, and it is of scant relevance that her residence is located in the neighboring State of Maryland.  It is indisputable that she has a substantial stake in the practice of law in Virginia.  Indeed, despite appellants' suggestion at oral argument that Friedman's case is

"atypical," Tr. of Oral Arg. 51, the same will likely be true of all nonresident attorneys who are admitted on motion to the Virginia Bar, in light of the State's requirement that attorneys so admitted show their intention to maintain an office and a regular practice in the State. See *Application of Brown,* 213 Va. 282, 286, n. 3, 191 S. E. 2d 812, 815, n. 3 (1972) (interpreting full-time practice requirement of Rule 1A:1). This requirement goes a long way toward ensuring that such attorneys will have an interest in the practice of law in Virginia that is at least comparable to the interest we ascribed in *Piper* to applicants admitted upon examination. Accordingly, we see no reason to assume that nonresident attorneys who, like Friedman, seek admission to the Virginia bar on motion will lack adequate incentives to remain abreast of changes in the law or to fulfill their civic duties.

Further, to the extent that the State is justifiably concerned with ensuring that its attorneys keep abreast of legal developments, it can protect these interests through other equally or more effective means that do not themselves infringe constitutional protections. While this Court is not well positioned to dictate specific legislative choices to the State, it is sufficient to note that such alternatives exist and that the State, in the exercise of its legislative prerogatives, is free to implement them. The Supreme Court of Virginia could, for example, require mandatory attendance at periodic continuing legal education courses. See *Piper, supra,* at 285, n. 19. The same is true with respect to the State's interest that the nonresident bar member does his or her share of volunteer and *pro bono* work. A "nonresident bar member, like the resident member, could be required to represent indigents and perhaps to participate in formal legal-aid work." *Piper, supra,* at 287 (footnote omitted).

We also reject appellants' attempt to justify the residency restriction as a necessary aid to the enforcement of the full-time practice requirement of Rule 1A:1. Virginia already requires, pursuant to the full-time practice restriction of Rule

1A:1, that attorneys admitted on motion maintain an office for the practice of law in Virginia. As the Court of Appeals noted, the requirement that applicants maintain an office in Virginia facilitates compliance with the full-time practice requirement in nearly the identical manner that the residency restriction does, rendering the latter restriction largely redundant. 822 F. 2d, at 429. The office requirement furnishes an alternative to the residency requirement that is not only less restrictive, but also is fully adequate to protect whatever interest the State might have in the full-time practice restriction.

### III

We hold that Virginia's residency requirement for admission to the State's bar without examination violates the Privileges and Immunities Clause. The nonresident's interest in practicing law on terms of substantial equality with those enjoyed by residents is a privilege protected by the Clause. A State may not discriminate against nonresidents unless it shows that such discrimination bears a close relation to the achievement of substantial state objectives. Virginia has failed to make this showing. Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

CHIEF JUSTICE REHNQUIST, with whom JUSTICE SCALIA joins, dissenting.

Three Terms ago the Court invalidated a New Hampshire Bar rule which denied admission to an applicant who had passed the state bar examination because she was not, and would not become, a resident of the State. *Supreme Court of New Hampshire* v. *Piper*, 470 U. S. 274 (1985). In the present case the Court extends the reasoning of *Piper* to invalidate a Virginia Bar rule allowing admission on motion without examination to qualified applicants, but restricting the privilege to those applicants who have become residents of the State.

For the reasons stated in my dissent in *Piper*, I also disagree with the Court's decision in this case. I continue to believe that the Privileges and Immunities Clause of Article IV, § 2, does not require States to ignore residency when admitting lawyers to practice in the way that they must ignore residency when licensing traders in foreign goods, *Ward* v. *Maryland*, 12 Wall. 418 (1871), or when licensing commercial shrimp fishermen, *Toomer* v. *Witsell*, 334 U. S. 385 (1948).

I think the effect of today's decision is unfortunate even apart from what I believe is its mistaken view of the Privileges and Immunities Clause. Virginia's rule allowing admission on motion is an ameliorative provision, recognizing the fact that previous practice in another State may qualify a new resident of Virginia to practice there without the necessity of taking another bar examination. The Court's ruling penalizes Virginia, which has at least gone part way towards accommodating the present mobility of our population, but of course leaves untouched the rules of those States which allow no reciprocal admission on motion.* Virginia may of course retain the privilege of admission on motion without enforcing a residency requirement even after today's decision, but it might also decide to eliminate admission on motion altogether.

---

*At present, 28 states do not allow reciprocal admission on motion: Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Hawaii, Idaho, Kansas, Louisiana, Maine, Maryland, Massachusetts, Mississippi, Montana, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Utah, Washington, and Wyoming.