**Linda S. COOK, Plaintiff,**

v.

**Candice MILLER, Individually, and as Secretary of State of Michigan, Defendant.**

No. 5:95–CV–35.

United States District Court, W.D. Michigan, Southern Division.

Jan. 3, 1996.

Linda S. Cook, Toledo, OH, Pro Se.

Leo H. Friedman, Frank J. Kelley, Attorney General, Corrections Division, Lansing, MI, for defendant.

## *OPINION*

QUIST, District Judge.

This is a civil suit wherein plaintiff Linda S. Cook alleges that M.C.L. § 55.107(2), which requires one to be a citizen of the State of Michigan and a resident of a county therein in order to receive an appointment as a notary public, violates her rights under Art. I, § 8, Art. IV, § 2, and Amendment XIV of the United States Constitution. Plaintiff re-

quests that the Court enjoin defendant Candice Miller, Michigan's Secretary of State, from enforcing the statute. Plaintiff also requests the Court to order defendant to immediately commission plaintiff as a notary public for the State of Michigan. This matter is before the Court on plaintiff's motion for summary judgment and defendant's motion to dismiss and/or for summary judgment. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

### Facts

Plaintiff is a resident of the State of Ohio. She is an attorney licensed to practice in both Ohio and Michigan who maintains her law office in Toledo, Ohio. Plaintiff swore in an affidavit that 48% of plaintiff's law practice is conducted in the State of Michigan with Michigan residents. (Plaintiff's Affidavit ("Aff.") at 1.) Plaintiff also testified that the majority of legal documents she creates require the services of a notary public. (Aff. at 1.) When plaintiff requires the services of a Michigan notary public, she usually drives to a local bank with her clients and documents in tow. The entire process usually takes a few hours and is often conducted in a public setting. These circumstances not only deprive plaintiff of time and money, but frequently compromise the confidentiality of the transaction. (Aff. at 1–2.) Several clients have canceled business with plaintiff in favor of resident Michigan attorneys with the express intent of avoiding this expensive and intrusive process. (Aff. at 2.)

In 1994, plaintiff requested an application from the defendant to become a notary public. In a letter dated December 15, 1994, defendant refused plaintiff's request because plaintiff did not satisfy Michigan's statutory residency requirement under M.C.L. § 55.107(2). This statute provides that

> In order to receive an appointment [as a notary public], an individual shall be, at the time of application ... a resident of the county of which he or she desires to be

appointed notary public, and a citizen of this state.[1]

### Discussion

#### A. Summary Judgment Standard

Summary judgment is appropriate when no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In the instant case, both parties have moved for summary judgment regarding the constitutionality of M.C.L. § 55.107(2). For the purposes of this decision, there are no material facts at issue. It is therefore appropriate for this Court to apply the law to the facts of the case.

#### B. Plaintiff's Standing Under Art. III, § 2

Defendant has challenged plaintiff's standing to bring suit in the case at bar. The United States Constitution grants federal courts jurisdiction over "cases and controversies." U.S. Const. art. III, § 2. To establish standing under Article III, the plaintiff "must clearly demonstrate that he has suffered an 'injury in fact' ... as opposed to [being] merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) (citations omitted). Further, a plaintiff seeking injunctive relief must "show a very significant possibility of future harm in order to have standing." *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995), *cert. denied*, ⸺ U.S. ⸺, 116 S.Ct. 800, 133 L.Ed.2d 748 (1995). When determining whether plaintiff has standing under Article III, a court must "consider the allegations of fact contained in [plaintiff's] declaration and other affidavits in support of his assertion of standing." *Bras*, 59 F.3d at 874 (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1974)). The testimony of the plaintiff alone may be

---

1. To the best of this Court's knowledge, whether state residency requirements for notaries public are constitutionally permissible presents a novel issue of law. *See* Michael L. Closen & G. Grant Dixon III, *Notaries Public from the Time of the Roman Empire to the United States Today, and Tomorrow*, 68 N.D.L.Rev. 873 (1992) (authors contend in section IV that "[t]he residency requirement ... has never been challenged in the courts.").

enough to establish standing under Article III. *Cf. Bras*, 59 F.3d at 874 (holding plaintiff's claim of standing satisfied summary judgment standard based on plaintiff's declaration and one additional letter).

■ As evidence of actual harm, plaintiff has submitted a single signed affidavit which is summarized on pages 1 and 2 of the Opinion. Despite having ample time to do so, defendant has not challenged the veracity or factual basis of plaintiff's affidavit. Because the facts set forth in the affidavit, if accurate, demonstrate that plaintiff has suffered actual harm in the past and will continue to suffer harm in the future, plaintiff has the requisite standing to maintain her lawsuit.

## C. The Due Process Clause (Amendment XIV)

■ The Due Process Clause protects one from the deprivation of life, liberty or property without due process of law. U.S. Const. amend. XIV. "To have a property interest ... a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A protected property interest may arise from an "entitlement created and defined by an independent source, such as state or federal law." *Id.*

■ Plaintiff contends that her property interest has its origin in M.C.L. § 55.107(2). State law creates a protected property interest in a license when two conditions are met: (1) the state licensing authority is required to issue a license to each applicant who complies with the statutory requirements and (2) the applicant has, in fact, fulfilled the licensing requirements. *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir.1989) (referring to building permits) (citing *Littlefield v. City of Afton*, 785 F.2d 596, 602 (8th Cir.1986)).

■ In the case at bar, there is no property interest at issue. Plaintiff has never held a commission as a Michigan notary public in the past. Further, plaintiff, an Ohio resident, cannot comply with Michigan's licensing requirements for notaries public because Michigan law requires that she be a Michigan resident. While plaintiff contends that the Michigan licensing statute is itself unconstitutional, her claim only demonstrates her "unilateral expectation" that she is entitled to be appointed a notary public. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. The vast majority of states have enacted state residency requirements for its notaries public. *See* Closen & Dixon, *supra* note 1, at Section IV. Despite this fact, no court had ever held the requirements to be invalid prior to plaintiff's request for an application to become a Michigan notary. *Id.* While this Court may determine that M.C.L. § 55.107(2) is unconstitutional on other grounds, plaintiff's "expectation" remains unilateral until such time.

## D. The Equal Protection Clause (Amendment XIV)

■ M.C.L. § 55.107 expressly distinguishes between applicants on the basis of Michigan citizenship and county of residence. The statute, however, does not implicate any suspect classification or quasi-suspect classifications. The statute also does not impinge on a fundamental right. Because the statute neither implicates a suspect or quasi-suspect classification nor impinges on a fundamental right, this Court must subject the statute to rational basis scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988). Under a rational basis analysis, state action violates the Equal Protection Clause if it does not "rationally further[ ] a legitimate state purpose or interest." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 55, 93 S.Ct. 1278, 1308, 36 L.Ed.2d 16 (1973).

■ Defendant contends that without the residency requirement, Michigan would be unable to subpoena notaries public who reside outside its jurisdiction. This circumstance would hinder Michigan's ability to call notaries public as witnesses at trial. The testimony of a notary is usually helpful when the circumstances surrounding the creation of a legal document or the validity of the notary's seal is at issue.

This Court holds that Michigan has a legitimate reason for ensuring that courts are able to subpoena notaries public, and the statute is rationally related to that end. This Court holds that the statute satisfies the rational basis test.

### E. The Commerce Clause (Art. I, § 8)

■ Whether a state regulation violates the Commerce Clause by unduly burdening interstate commerce is determined with reference to the "balance of interests" analysis established in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). Under this approach, the Court must consider three factors:

> (1) whether the challenged statute regulates evenhandedly with only "incidental" effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect; (2) whether the statute serves a legitimate local purpose; and, if so (3) whether alternative means could promote this local purpose as well without discriminating against interstate commerce.

*Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979) (citing *Pike,* 397 U.S. at 142, 90 S.Ct. at 847). "The principle focus of the inquiry must be the practical operation of the statute, since the validity of state laws must be judged chiefly in terms of their probable effects." *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 37, 100 S.Ct. 2009, 2016, 64 L.Ed.2d 702 (1980); *L.P. Acquisition Co. v. Tyson,* 772 F.2d 201, 205 (6th Cir.1985).

■ Beyond the circumstances of plaintiff's individual case, there has been no evidentiary showing that M.C.L. 55.107(2) unduly burdens interstate commerce. Further, there is apparently no protectionist motive underlying the residency requirement. Typically, the fees charged by notaries, and thus the in-state revenue generated by notaries, is nominal or minimal. *See* Closen & Dixon, *supra* note 1, at Section IV. The residency requirement also serves the legitimate purpose of allowing Michigan to subpoena its notaries public. This Court holds that M.C.L. § 55.107(2) does not violate the Commerce Clause.

### F. The Privileges and Immunities Clause (Art. IV, § 2)

■ The Privileges and Immunities Clause states that "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2. "While the Privileges and Immunities Clause cites the term 'Citizens,' for analytic purposes citizenship and residency are essentially interchangeable." *Supreme Court of Virginia v. Friedman,* 487 U.S. 59, 64, 108 S.Ct. 2260, 2264, 101 L.Ed.2d 56 (1988). The United States Supreme Court has established a two-prong test for determining whether a classification based on state citizenship or residency is Constitutional. First, only activities " 'sufficiently basic to the livelihood of the Nation' ... fall within the purview of the Privileges and Immunities Clause." *Friedman,* 487 U.S. at 64, 108 S.Ct. at 2264 (quoting *Baldwin v. Montana Fish & Game Comm'n,* 436 U.S. 371, 388, 98 S.Ct. 1852, 1863, 56 L.Ed.2d 354 (1978)). "Second, if the challenged restriction deprives nonresidents of a protected privilege ... the restriction [must be] closely related to the advancement of a substantial state interest" to be valid. *Friedman,* 487 U.S. at 65, 108 S.Ct. at 2264.

Regarding the first prong, the Supreme Court has held that the Privileges and Immunities Clause protects the right of a nonresident "to pursue a livelihood in a State other than his own." *Baldwin,* 436 U.S. at 386, 98 S.Ct. at 1861. In specific terms, the Supreme Court has held that "one of the privileges which the [Privileges and Immunities] Clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State.' " *Supreme Court of New Hampshire v. Piper,* 470 U.S. 274, 280, 105 S.Ct. 1272, 1276, 84 L.Ed.2d 205 (1985) (quoting *Toomer v. Witsell,* 334 U.S. 385, 395, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948)). The Supreme Court has also held that a nonresident's right to practice law is a constitutionally protected privilege. *Friedman,* 487 U.S. at 66, 108 S.Ct. at 2265.

■ In the instant case, plaintiff does not claim that she earns her livelihood as a

notary public. Rather, plaintiff claims that because she has been denied a commission as a notary public in Michigan, her ability to pursue her occupation as a lawyer has been significantly hampered. Beyond the circumstances surrounding plaintiff's individual legal practice, there has been no evidence offered which shows that nonresident lawyers' inability to personally notarize their work in Michigan puts their practices on substantially unequal terms with those of resident attorneys. The Supreme Court has ruled that the duties of a notary public "are essentially clerical and ministerial," not adversarial or judicial, in nature. *Bernal v. Fainter*, 467 U.S. 216, 225, 104 S.Ct. 2312, 2319, 81 L.Ed.2d 175 (1984). Moreover, this Court doubts that the majority of resident Michigan attorneys think it professionally expedient enough to actually bother becoming notaries public. The lawyer's secretary, receptionist, or the person next door is able to notarize documents as well as the attorney. Plaintiff's personal experience notwithstanding, plaintiff has not brought forth enough evidence to prevail on a facial challenge to M.C.L. § 55.107(2).

### G. Constitutionality of the Statute as Applied to Plaintiff

Having reviewed plaintiff's claims under Art. I, § 8, Art. IV, § 2, and Amendment XIV of the United States Constitution, this Court finds that the residency requirement for notaries public found in M.C.L. § 55.107(2) is constitutional on its face. This finding does not preclude this Court from finding that the residency requirement, while drafted in accordance with the United States Constitution, was unconstitutional as applied to plaintiff under the Privileges and Immunities Clause.[2] In the instant case, the facts set forth in plaintiff's affidavit may demonstrate that Michigan's denial of a notary commission prevented *plaintiff* from practicing law on substantially equal terms with attorneys residing in Michigan. The litigants, however, did not brief this issue ade-

quately. Therefore, the Court will not rule on this issue at the present time.

For the reasons stated above, plaintiff Linda Cook's motion for summary judgment will be denied in part while defendant Candice Miller's motion to dismiss and/or for summary judgment will be granted in part. An Order consistent with this Opinion will be entered.

### ORDER

In accordance with the Opinion issued on this date,

**IT IS HEREBY ORDERED** that defendant Candice Miller's Motion to Dismiss and/or for Summary Judgment (docket no. 12) is **GRANTED IN PART**. It is granted to the extent that M.C.L. § 55.107(2), on its face, does not violate the Constitution. This Court will decide whether M.C.L. § 55.107(2) is unconstitutional as applied to plaintiff pending further briefing by the litigants.

**IT IS FURTHER ORDERED** that, for the reasons given above, plaintiff Linda Cook's Motion for Summary Judgment (docket no. 10) is **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the parties shall have forty-five (45) days following service of this Order to brief the question of whether M.C.L. § 55.107(2) is unconstitutional as applied to plaintiff. The parties must file the briefs with the Clerk of the Court and serve a copy on all attorneys of record. If defendant Candice Miller fails to file a brief as required by this paragraph, an injunction preventing defendant from enforcing M.C.L. § 55.107(2) against plaintiff will issue and this Court will order defendant to summarily issue plaintiff an application to become a notary public.

**IT IS FURTHER ORDERED** that the parties may conduct discovery until twenty-one (21) days before the briefs are due.

---

**2.** As an explanatory note, "[t]he practical effect of holding a statute unconstitutional 'as applied' [excluding violations of the First Amendment] is to prevent its future application in a similar context, but not to render it completely inoperative. To achieve the latter result, the plaintiff

must succeed in challenging the statute 'on its face.'" *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting from a memorandum decision denying a petition for certiorari).