Steven C. MORRISON, Plaintiff,

v.

BOARD OF LAW EXAMINERS OF THE STATE OF NORTH CAROLINA, and Susan Freya Olive, Thomas Steed, Jr., Karl Adkins, Edward J. Harper, II, Gail C. Arneke, Robin L. Tatum, Catherine E. Thompson, William K. Davis, Roy W. Davis, Jr., Emil F. Kratt, Shirley L. Fulton and Fred P. Parker III and their successors, in their capacities as director and/or members of the Board of Law Examiners, Defendants.

No. 5:04–CV–92–BO(3).

United States District Court, E.D. North Carolina. Western Division.

Feb. 4, 2005.

Steven C. Morrison, Holly Springs, NC, Pro se.

David J. Adinolfi, II, N.C. Dept. of Justice, Raleigh, NC, for Defendants.

## ORDER

BOYLE, District Judge.

This matter is before the Court on Plaintiff's and Defendants' Cross Motions for Summary Judgment. The underlying dispute involves Defendants' requirements for attorneys to obtain a comity admission to the North Carolina Bar.

For the reasons discussed below, both Parties' Motions for Summary Judgment are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff is an attorney who graduated with honors from Indiana University School of Law in 1979. He is licensed to practice law in Indiana, Ohio, and California. Plaintiff was admitted to practice law in Indiana in 1979. He was admitted to practice in Ohio in 1981. Until his move to California in 1984, Plaintiff maintained law offices in both Indiana and Ohio. He was admitted to practice in California in 1985. Plaintiff relocated to North Carolina in 2000. On December 15, 2003, Plaintiff submitted a comity application for admission to the North Carolina Bar. In the six years immediately preceding his application to Defendants, Plaintiff practiced law in both California and as in-house counsel in North Carolina.

North Carolina Board of Law Examiners Rule .0502 lists the requirements necessary for obtaining a comity admission. Subpart (3) of that rule requires that the applicant "prove to the satisfaction of the Board that the applicant is duly licensed to practice law in a state, or territory of the United States, or the District of Columbia, having comity with North Carolina and that in such state, or territory of the United States, or the District of Columbia, while so licensed therein, the applicant has been for at least four out of the last six years, immediately preceding the filing of this application with the Secretary, actively and substantially engaged in the full-time practice of law." *See* N.C.B.L.E. Rule .0502(3).

On January 20, 2004, Defendants advised Plaintiff that his application for a comity admission was denied. Upon further inquiry, Plaintiff discovered that his application had been denied because he had not practiced in a state having comity with North Carolina for four of the six years preceding his application to Defendants. Rather, he had practiced law in California, which does not have comity with North Carolina. On February 11, 2004, Plaintiff filed the instant suit pursuant to 42 U.S.C. § 1983, alleging that both the requirement that he be admitted to practice in a state having comity with North Carolina ("the comity requirement") and the requirement that he have practiced for four of the past six years in that state ("the state-specific practice requirement") violate the United States Constitution, particularly the Article IV, section 2 Privileges and Immunities Clause ("Article IV, section 2") and the Fourteenth Amendment Equal Protection, Privileges or Immunities ("Privileges or Immunities Clause").

## ANALYSIS

This case turns on the constitutionality of Defendants' requirement that Plaintiff have practiced in a comity jurisdiction for four of the six years immediately preceding his application. Plaintiff argues the state-specific practice requirement is unconstitutional because it treats certain United States citizens differently based on their prior state of residence. Defendants argue that the state-specific practice requirement is not a residency requirement; that states are historically granted deference in regulating their own bars; and that state bar admission requirements are subject only to rational basis review.

Federal Rule of Civil Procedure 56(c) sets out the standard to be met by a party seeking summary judgment. *See* Fed. R.Civ.P. 56(c). Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden to show the court that there is no genuine issue concerning any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to survive the motion, the non-moving party must then show that there is "evidence from which a jury might return a verdict in his favor." *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. The Court must accept all of the non-moving party's evidence as true and must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 255, 106 S.Ct. 2505. In this case, the parties stipulate that no issue of fact exists, and the case is ripe for summary judgment.

### 1. Bar Admissions Jurisprudence in the Fourth Circuit

The question of bar admission requirements is not new to this Circuit. *See Goldfarb v. Supreme Court of Virginia*, 766 F.2d 859 (4th Cir.1985) (upholding Virginia's requirement that, in order to obtain an admission by motion to the Virginia Bar, an applicant intend to practice full-time in Virginia); *see Hawkins v. Moss*, 503 F.2d 1171 (4th Cir.1974) (upholding South Carolina's reciprocity requirements against an equal protection challenge brought by an attorney not already admitted to practice in a state having a reciproc-

ity arrangement with South Carolina); *see Keenan v. Board of Law Examiners,* 317 F.Supp. 1350 (E.D.N.C.1970) (striking down North Carolina's requirement that an applicant for admission to the North Carolina Bar reside for at least one year in North Carolina prior to sitting for the Bar examination). However, the unique facts of Plaintiff's case distinguish it from the cases above and present a novel question to the Court.

### 2. North Carolina's Comity Requirement

■ Because Plaintiff is admitted to the state bars of two states having comity with North Carolina, he has no comity barrier to admission in North Carolina. Consequently, he does not risk exclusion from the practice of law by state action in North Carolina because of North Carolina's comity requirement. Plaintiff has suffered no injury in fact from North Carolina's comity requirement and cannot question it in this case. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's challenge to North Carolina's comity requirement is GRANTED. Plaintiff's challenge to the comity requirement is DISMISSED.

### 3. The State-specific Practice Requirement

■ While the states' responsibility for professional licensing is entitled to considerable deference, *see Leis v. Flynt,* 439 U.S. 438, 442, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) ("Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions."), the Supreme Court has invalidated certain states' bar admission requirements on constitutional grounds. *See, e.g., Supreme Court of Virginia v. Friedman,* 487 U.S. 59, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988) (striking down the Virginia State Bar's residency requirement as a prerequisite to Virginia's equivalent of a comity admission on Article IV, section 2 grounds); *Supreme Court of New Hampshire v. Piper,* 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985) (striking down the New Hampshire State Bar's residency requirement as a prerequisite to admission to the New Hampshire Bar on Article IV, section 2 grounds); *see also Barnard v. Thorstenn,* 489 U.S. 546, 109 S.Ct. 1294, 103 L.Ed.2d 559 (1989) (striking down on Article IV, section 2 grounds the Virgin Islands' requirement that an applicant to the Virgin Islands Bar have resided in the Virgin Islands for a year prior to his or her application for admission and, if admitted, he or she intend to reside and practice in the Virgin Islands). In those cases, the practice of law was firmly recognized as a "privilege" under Article IV, section 2. *Piper,* 470 U.S. at 281, 105 S.Ct. 1272; *Friedman,* 487 U.S. at 66, 108 S.Ct. 2260.

■ In this case, Plaintiff, a citizen of North Carolina, seeks a comity admission to the North Carolina Bar. He has been denied the opportunity to practice law in North Carolina and that denial infringes on a privilege protected by Article IV, section 2.[1] Unlike *Piper, Friedman,* and *Barnard,* the unique fact of this case is that Plaintiff has already relocated to North Carolina, and, thus, a reading of

---

1. It is important to note that the *Friedman* Court specifically rejected Virginia's contention that the fact that the applicant for admission by motion was always free to sit for the Virginia Bar examination meant that the applicant was not being discriminated against on the basis of citizenship. Here, Defendants contend that Plaintiff has always been free to sit for the North Carolina Bar like any other applicant and thus is not being discriminated against on the basis of prior residency. The *Friedman* Court specifically rejected this argument and so does this Court. *See Friedman,* 487 U.S. at 66–67, 108 S.Ct. 2260.

Article IV, section 2 under *Slaughter-House* affords him no protection. *See Goldfarb*, 766 F.2d at 864–65 ("Goldfarb may not rely directly on [*Piper* and its progeny] because [Goldfarb] is a Virginia resident, and [Article IV, section 2] provides no security for the citizen of the State in which the privileges were claimed.") (quoting *Slaughter-House*, 83 U.S. at 77, 83 U.S. 36) (internal quotations omitted). Applying *Goldfarb* produces the result that Plaintiff, a North Carolinian by virtue of current residence, cannot assert his *Piper*-recognized fundamental right to pursue his profession under Article IV, section 2, which he could assert had he applied for a comity admission while in California.

In more typical challenges to bar admission requirements, plaintiffs have relied on the Equal Protection Clause of the Fourteenth Amendment. *See, e.g., Hawkins v. Moss*, 503 F.2d 1171 (4th Cir. 1974); *Brown v. Supreme Court of Virginia*, 359 F.Supp. 549 (E.D.Va.1973) (rejecting an equal protection challenge to Virginia's requirement that an attorney seeking admission to the Virginia Bar without examination express an intent to reside and practice in Virginia). However, few courts, if any, did not apply rational basis review, and, as such, equal protection challenges to bar admission standards, other than residency requirements, have been uniformly upheld. In this case, Plaintiff relies on several components of the Fourteenth Amendment to challenge Rule .0502(3). For the reasons discussed below, the Court will only address the most novel of Plaintiff's claims.

Recent Supreme Court precedent allows Plaintiff to pursue this action under the Fourteenth Amendment's Privileges or Immunities Clause.[2] In 1999, the Supreme Court relied on the "right to travel" to invalidate a California law that calculated the amount of welfare benefits available to a newly-arrived California resident based on the amount of benefits available to that individual in his previous state of residence. *See Saenz v. Roe*, 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).[3]

In 1992, the California Legislature enacted § 11450.03 of the state Welfare and Institutions Code. That section limited for new residents the amount of California Aid to Families with Dependent Children ("AFDC") available to the amount the new residents would have received in the State of their prior residence. *Saenz*, 526 U.S. at 493, 119 S.Ct. 1518. In 1997, two plaintiffs from Oklahoma and Washington, D.C., respectively, filed suit challenging the constitutionality of the statute.

Both plaintiffs arrived from states that had benefit levels that were substantially lower than those of California. *Saenz*, 526 U.S. at 496, 119 S.Ct. 1518. The statute created two groups of welfare beneficia-

---

**2.** The *Saenz* Court held that standing to challenge state action under the Fourteenth Amendment Privileges or Immunities Clause derived from both state and United States citizenship. *Saenz*, 526 U.S. at 502, 119 S.Ct. 1518. Accordingly, Plaintiff could have brought his "right to travel" challenge prior to his move to North Carolina.

**3.** The *Saenz* Court recognized the "right to travel" as having three components. "[The "right to travel"] protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz*, 526 U.S. at 500, 119 S.Ct. 1518. The Court held that the first component pre-dated the Constitution; the second was enshrined in Article IV, section 2; and the third was protected by the Privileges or Immunities Clause of the Fourteenth Amendment. *Saenz*, 526 U.S. at 501–03, 119 S.Ct. 1518.

ries among those who had not resided in California for at least one year: 1) those favored beneficiaries who moved to California from states having welfare benefit levels equaling or exceeding those of California and 2) those disfavored beneficiaries who arrived from states with benefit levels lower than those of California. The distinction between the two groups of beneficiaries turned solely on the location of the beneficiaries' prior states of residence. *Saenz*, 526 U.S. at 505, 119 S.Ct. 1518.

The statute discriminated "against citizens who ha[d] completed their interstate travel," and, therefore, implicated the plaintiffs' Fourteenth Amendment right, the third component of the "right to travel," to "be treated equally in [their] new State of residence." *Saenz*, 526 U.S. at 504–05, 119 S.Ct. 1518. Not recognizing a "fundamental right" to welfare benefits but instead a right to receive equal treatment in the new state, the Court held that California's statutory scheme violated the right to travel "unless shown to be necessary to promote a compelling governmental interest." *Saenz*, 526 U.S. at 504, 119 S.Ct. 1518 (citing 526 U.S. at 499, 119 S.Ct. 1518).

California "advanced an entirely fiscal justification for its multi-tiered scheme," arguing that the law would save California approximately $10.9 million a year. *Saenz*, 526 U.S. at 506, 119 S.Ct. 1518.[4] While not questioning the legitimacy of the state's interest, the Court held that the means of saving money chosen by the state were unconstitutional because neither the "duration of respondents' California residence, nor the identity of their prior States of residence, has any relevance to their

need for benefits. Nor do those factors bear any relationship to the State's interest in making an equitable allocation of the funds to be distributed among [California's] needy citizens." *Saenz*, 526 U.S. at 507, 119 S.Ct. 1518. The statute violated the Fourteenth Amendment because it was not narrowly tailored to serve California's interest and, therefore, unnecessarily infringed on the third component of the right to travel.

Here, Defendants base their determination of an applicant's suitability for a comity admission in part on the state in which an applicant last practiced law. The rule requires that applicant "prove to the satisfaction of the Board that the applicant is duly licensed to practice law in a state, or territory of the United States, or the District of Columbia, having comity with North Carolina and that in such state, or territory of the United States, or the District of Columbia, while so licensed therein, the applicant has been for at least four out of the last six years, immediately preceding the filing of this application with the Secretary, actively and substantially engaged in the full-time practice of law." N.C.B.L.E. Rule .0502(3).

Defendants' require an applicant to have "been physically practicing in [the comity] jurisdiction." *See* "Reciprocity Requirements for Admission to Practice Law in North Carolina," *available at* http://www.ncble.org. Even though the text of the Rule considers location of prior practice and not residence, the Rule in fact considers Plaintiff's prior residence because Plaintiff both lived and worked in California.

---

**4.** The *Saenz* Court pointed out that both the District and Appellate Courts found the law's unstated purpose to be discouragement of indigent immigration into California. There is no allegation in this case that Defendants hope to discourage immigration to North Car-

olina by lawyers from states not having comity with North Carolina. Instead, Defendants argue that the rule encourages other states to open their jurisdictions to North Carolina lawyers.

However logical it is to equate residency with place of practice, evidence proving as much is unavailable to the Court. In the legal profession and the workforce in general, crossing a state line to get to work would appear to be the exception more often than the rule. Of course, border residents and those Americans who live in major metropolitan areas, e.g., greater New York City, might cross state lines daily as a matter of course. Nonetheless, statistics supporting the proposition are elusive.[5] In Plaintiff's case, however, like the statute at issue in *Saenz*, the state-specific practice requirement treats him differently based on his immediately prior state of residence.

■ By its terms, Defendants' Rule .0502(3) sets out three requirements for an applicant seeking admission by comity: 1) a license to practice law in a comity jurisdiction; 2) having practiced law for four of the past six years immediately preceding the application for admission by comity; and 3) having done so in the jurisdiction from which the applicant seeks a comity admission.[6] Rule .0502(5) further requires that the applicant be in good standing in every jurisdiction in which he is admitted to practice.

Therefore, among all the lawyers seeking comity admissions, the favored group consists of those lawyers admitted in a jurisdiction having comity with North Car-

olina who have practiced in that jurisdiction for four of the past six years and are in good standing in every jurisdiction in which they are admitted to practice. The disfavored group consists of those lawyers not admitted in a comity jurisdiction; those lawyers admitted in a comity jurisdiction who have not been practicing law for four of the past six years; those lawyers admitted in a comity jurisdiction who have been practicing law for four of the past six years but are not in good standing with every jurisdiction in which they are admitted; and those lawyers admitted in a comity jurisdiction who have been practicing law for four of the past six years and are in good standing with every jurisdiction in which they are admitted but have not been practicing in a comity jurisdiction. Only the last group's identity is based solely on the location of its members' prior residence and practice location. Plaintiff is a member of this group.

Rule .0502(3)'s operation against that group implicates the Fourteenth Amendment-protected third component of the right to travel, as discussed by the Court in *Saenz*: the rule treats an applicant differently based on his prior state of residence. *See Saenz*, 526 U.S. at 502, 119 S.Ct. 1518 ("What is at issue in this case, then, is this third aspect of the right to travel-the right of the newly arrived citizen to the same privileges and immunities en-

5. Of the several state bars contacted by the Court, none have statistics comparing residency to location of practice. Rather, the state bars compile statistics indicating whether an attorney who is licensed in a particular state lives in that state. As an example, a resident of Atlanta is licensed to practice law in North Carolina and Georgia, with his primary practice occurring in the state of Georgia. He would be counted by the North Carolina Bar as an out-of-state member of the North Carolina Bar. That fact indicates nothing about whether he lives in greater Atlanta or commutes from Chattanooga daily.

6. Plaintiff characterizes Rule .0502(3) has having only two components: the comity requirement and the state-specific practice requirement. *See supra* p. 752–53. To avoid constitutional concerns over federalism, the Court construes the Rule as having three severable components. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 71 n. 15, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (recognizing the doctrines of avoidance of constitutional questions and federalism concerns).

joyed by other citizens of the same State."). If Plaintiff had moved directly from Indiana to North Carolina, he would have been granted a comity admission. However, as mentioned above, since he moved from California to North Carolina, he is being denied a comity admission. Accordingly, Defendants must justify both the requirement's purpose and means. *Saenz*, 526 U.S. at 504–05, 119 S.Ct. 1518. Absent a sufficient justification, the rule is unconstitutional.

Like the California Legislature in *Saenz*, Defendants have a legitimate and important purpose in seeking to ensure only the most competent attorneys are admitted to practice in North Carolina. *See Hawkins v. Moss*, 503 F.2d 1171, 1175 (4th Cir.1974) (recognizing a state's bar's substantial interest in ensuring an applicant's legal competency or proficiency); *see also* N.C.G.S. § 84–24 ("The Board of Law Examiners shall have full power and authority to make or cause to be made such examinations and investigations as may be deemed by it necessary to satisfy it that the applicants for admission to the Bar possess the qualifications of character and general fitness requisite for an attorney and counselor-at-law."). In an affidavit, Defendant Fred P. Parker III has asserted that the purpose of Rule .0502 is to, *inter alia,* "insure that comity applicants are admitted from jurisdictions which demand high standards similar to those the State of North Carolina demands of applicants." Def.'s Aff. 2.[7] Like the Court in *Saenz*, this Court accepts as legitimate Defendants' stated purposes.

However, like the statute challenged in *Saenz*, the requirement that the applicant have practiced in a specific jurisdiction before coming to North Carolina is not narrowly tailored to serve North Carolina's interests. *See Saenz*, 526 U.S. at 507, 119 S.Ct. 1518. Defendants' purpose is served by the comity requirement alone. Admission in a state having comity with North Carolina indicates an applicant's competence as a lawyer. Here, Plaintiff has been admitted in both Indiana and Ohio since 1981. Both jurisdictions meet North Carolina's standards for comity recognition.

Defendants' purpose is further served by the requirement that an applicant have "actively and substantially engaged in the full-time practice of law" for four of the six years immediately preceding his application. N.C.B.L.E. Rule .0502(3). This requirement ensures that an applicant cannot immediately gain admission to practice in North Carolina once he obtains admission to a comity jurisdiction. Rather, the rule requires that he practice in another jurisdiction for a sufficient period of time to ensure his professional competence. Here, Plaintiff has practiced law for nearly twenty-five years. He has taught courses for the California Bar and has unique experiences practicing law in Indiana, Ohio, California, and North Carolina. There is little danger that, if granted a comity admission, he will fail to meet Defendants' standards.

Rule .0502(5) further serves Defendants' purposes by requiring that an applicant for comity "[b]e at all times in good professional standing and entitled to practice in every state . . . in which the applicant has been licensed to practice." Plaintiff is

---

7. Assuming without deciding that using comity admissions as a means to encourage other states to grant comity admissions to North Carolina lawyers is an acceptable purpose, *see* Def.'s Aff. 2, that purpose is served by Rule .0502(4) alone. N.C.B.L.E. Rule .0502(4) (requiring that an applicant for a comity admission satisfy Defendants that the jurisdiction from which he seeks admission admits North Carolina lawyers without examination).

in good standing with the state bars of California, Indiana, and Ohio.

The only remaining aspect of the rule is its emphasis on the state in which an applicant practiced for four of the six years immediately preceding his application. This component of Rule .0502(3) does not serve Defendants' purposes. There is no jurisdiction in the United States that has a particularly deficient legal bar. Thus, there is little chance that a lawyer's experience practicing in a non-comity jurisdiction could adversely affect his professional competence. Here, Plaintiff has spent the last six years practicing in both North Carolina and California. Neither jurisdiction's legal bar is so deficient as to raise questions about Plaintiff's competence as an attorney.

■ Because Rule .0502(3)'s state-specific practice requirement treats Plaintiff differently on the basis of the state in which he used to live and practice, the Fourteenth Amendment right to travel is implicated. Where state action implicates the right to travel, to survive a constitutional challenge, a state must justify the action's purpose and means by showing that it is necessary to serve a compelling state interest. If that justification is insufficient, the state action is unconstitutional.

In this case, Defendants' rule treats Plaintiff differently based on whether he used to practice in certain states, thereby implicating the Fourteenth Amendment. Defendants' justification for the rule fails because their purposes are effectively served without applying the state-specific practice requirement. Since the justification fails, Rule .0502(3)'s state-specific practice requirement is unconstitutional. Accordingly, Plaintiff's Motion for Summary Judgment on his Privileges or Immunities Clause claim is GRANTED.[8]

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED as to his challenge to Defendants' requirement that he practice in a specific jurisdiction before obtaining a comity admission. Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's challenge to Defendants' comity requirement. Plaintiff's challenge to Defendants' comity requirement is DISMISSED.

The Court hereby enters a DECLARATORY JUDGMENT that Defendants' Rule .0502(3) is UNCONSTITUTIONAL as applied to Plaintiff so far as it requires comity applicants who are admitted to a comity jurisdiction and have practiced law for four of the past six years to have practiced in a certain jurisdiction during that time period. Defendants are PERMANENTLY ENJOINED from enforcing Rule .0502(3) against PLAINTIFF. Because Plaintiff is otherwise qualified pursuant to Rule .0502, Defendants are ORDERED to extend him a comity admission.

SO ORDERED.

---

8. It is important to note what Plaintiff's success today does not do. Defendants are not required to create comity arrangements with any jurisdiction in the country, and Defendants are free to impose practice requirements of any length of time on would-be comity applicants. Further, Defendants could abolish comity admissions in their en-tirety and require all applicants for admission to the North Carolina Bar to sit for the Bar Examination. Today's ruling holds only that Defendants cannot Constitutionally confer comity admissions based in part on the location of an applicant's prior state of practice and residence.