# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COUNCIL OF INSURANCE AGENTS &
BROKERS and REBECCA RESTREPO,
   *Plaintiffs-Appellees,*

v.

ALICE A. MOLASKY-ARMAN, in her
official capacity as Nevada
Commissioner of Insurance,
   *Defendant-Appellant.*

No. 04-17271

D.C. No.
CV-02-00813-JCM

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
October 19, 2006—San Francisco, California

Filed April 10, 2008

Before: Melvin Brunetti, Diarmuid F. O'Scannlain, and
Stephen S. Trott, Circuit Judges.

Opinion by Judge Brunetti

## COUNSEL

George H. Taylor and Robert Auer, Deputy Attorneys General of the State of Nevada, Carson City, Nevada, for the defendant-appellant.

Scott A. Sinder, Alysa N. Zeltzer, and Daniel S. Blynn, Collier Shannon Scott, PLLC, Washington, District of Columbia, for the plaintiffs-appellees.

Daniel F. Polsenberg, Lawrence Epstein, and Heidi Parry Stern, Beckley Singleton, Chtd., Las Vegas, Nevada, for the plaintiffs-appellees.

## OPINION

BRUNETTI, Circuit Judge:

On cross-motions for summary judgment, the district court declared Nevada's "countersignature" statute, Nev. Rev. Stat.

§ 680A.300, unconstitutional, holding that it violates the Privileges and Immunities Clause of Article IV and the Equal Protection Clause of the Fourteenth Amendment. 358 F. Supp. 2d 981, 982-83. The district court stayed its injunction pending appeal, and Defendant-Appellant Alice Molasky-Arman, Nevada Commissioner of Insurance (the Commissioner), now appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm and remand.

## I.   Facts and proceedings below

Plaintiff-Appellee Council of Insurance Agents & Brokers (the Council) is a national trade association that represents more than 250 of the nation's largest commercial property and casualty insurance agencies and brokerage firms. The Council's members, which include corporations and partnerships rather than individuals, place over eighty billion dollars in insurance premiums annually, which constitutes more than seventy-five percent of the commercial marketplace. The majority of the Council's members sell insurance in more than one state, and in many cases in all fifty states, to large, sophisticated, commercial end-users that typically have multistate exposures. Included in the Council's members are insurance agencies and brokerage firms based outside of Nevada that sell insurance in Nevada.

In this case, the Council challenges Nevada's "countersignature" statute, Nev. Rev. Stat. § 680A.300, which provides that no authorized insurer may make, write, place, or renew any insurance policy on persons, property, or risks in Nevada, "except through its duly appointed and licensed agents resident in [Nevada], any one of whom shall countersign the policy."[1] Despite this limitation on insurers, section 680A.300

---

[1]Section 680A.300 states in pertinent part:

   1.   Except as provided in NRS 680A.310, no authorized insurer may make, write, place, renew or cause to be made, placed or

guarantees the "free and unlimited right to negotiate insurance contracts by licensed nonresident agents or brokers outside [Nevada], if the policies, endorsements or evidence of those contracts covering properties or insurance interests in [Nevada] are countersigned by a resident agent . . . ." Finally, section 680A.300 requires that the countersigning agent be paid a commission of at least five percent of any resulting premium. In its complaint, the Council alleged that section 680A.300 violates the Constitution's Commerce Clause, Privileges and Immunities Clause of Article IV, and the Fourteenth Amendment's Equal Protection Clause.

---

renewed, any policy or duplicate policy of insurance of any kind upon persons, property or risks resident, located or to be performed in this state, except through its duly appointed and licensed agents resident in this state, any one of whom shall countersign the policy.

    . . . .

4.   Nothing contained in this section prevents exercise of the free and unlimited right to negotiate contracts by licensed nonresident agents or brokers outside this state, if the policies, endorsements or evidence of those contracts covering properties or insurable interests in this state are countersigned by a resident agent of this state. Every such policy or contract must be countersigned by a resident agent.

5.   On business produced by a licensed nonresident agent or broker, which is countersigned by a resident commissioned agent of this state, there must be a division of the usual commission between the licensed nonresident producing agent or broker and the resident countersigning commissioned agent which must produce for the latter a commission of at least 5 percent of the premium. No commission or fee is required as to policies with an annual premium of $250 or less. The insurer issuing any policy or bond is responsible for payment to the countersigning agent of the fee or commission for the countersignature. Where the licensed nonresident agent or broker or the insurer assuming the risk desires the resident commissioned agent to render additional services during the life of a policy, the compensation to the countersigning commissioned resident agent is a matter of contract between the parties in interest.

The Commissioner promptly filed a motion for summary judgment and the Council filed a cross-motion for summary judgment. The district court denied both parties' motions without prejudice; and after expressing some doubt as to whether the Council had standing to assert its constitutional claims during a hearing on the parties' motions, the court granted the Council leave to amend its complaint. The Council did so, adding Plaintiff-Appellee Rebecca Restrepo (Restrepo) as co-plaintiff in its First Amended Complaint, in which the Council reasserts its equal protection and privileges and immunities claims.

Restrepo is a resident of California, is licensed to sell insurance in California, and is the Managing Director of the Sacramento office of ABD Insurance and Financial Services (ABD), a member of the Council. Restrepo is also licensed to produce and sell insurance in Nevada as a nonresident agent. In Nevada, the Commissioner issues licenses to nonresidents as producers of insurance if four requirements are satisfied. Nev. Rev. Stat. § 683A.271. The nonresident must be in good standing as a licensed resident in his home state, pay a prescribed fee, submit an application, and the nonresident's home state must issue nonresident licences to Nevada residents pursuant to a substantially similar procedure.[2] In its First

---

[2] Section 683A.271 states in pertinent part:

1. Unless the Commissioner refuses to issue the license under NRS 683A.451, the Commissioner shall issue a license as a producer of insurance to a nonresident person if:

(a) He is currently licensed as a resident and in good standing in his home state;

(b) He has made the proper request for licensure and paid the fee prescribed for the license and a fee established by the Commissioner of not more than $15 for deposit in the Insurance Recovery Account;

(c) He has sent to the Commissioner the application for licensure that he made in his home state, or a completed uniform application; and

(d) His home state issues nonresident licenses as producers of insurance to residents of this State pursuant to substantially the same procedure.

Amended Complaint, the Council alleges that section 680A.300 causes Restrepo to forfeit approximately $50,000 annually, and that she is suffering immediate injury and being deprived of significant rights.

Following discovery, the Commissioner renewed and supplemented her initial motion for summary judgment, and the Council renewed its motion for summary judgment and supplemented its initial motion with a motion for summary judgment on behalf of Restrepo. This time, the district court granted the plaintiffs' motion, concluding that "Restrepo has standing," that the Council "has representative standing to assert the underlying constitutional claims" of "its member firms and their officers, directors, principals, and employees," and that section 680A.300 "plainly draws a distinction between Nevada-licensed resident agents and brokers," for which "there is no legitimate rational basis." 358 F. Supp. 2d at 982. Therefore, the district court held, section 680A.300 "violates the Privileges and Immunities Clause and Equal Protection Clause of the United States Constitution because it denies to Nevada-licensed nonresident insurance agents the same rights and privileges that are afforded to Nevada-licensed resident agents." *Id.* at 982-83. The district court enjoined the Commissioner from enforcing section 680A.300, but later stayed this injunction pending appeal. This appeal followed.

## II.  Standard of review

Reviewing de novo the district court's decision on cross-motions for summary judgment, we must decide whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Pocatello Educ. Ass'n v. Heideman*, 504 F.3d 1053, 1056 (9th Cir. 2007). We also review de novo whether the plaintiffs have standing, whether the plaintiffs' claims are moot, and the constitutionality of section 680A.300. *See Get*

*Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 890 (9th Cir. 2007); *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007).

## III.   Discussion

### A.   Standing

The Commissioner first argues that Restrepo and the Council lack standing to challenge the constitutionality of section 680A.300. "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.' " *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The doctrine of standing is based both on prudential concerns and on constitutional limitations on the jurisdiction of the federal courts." *Doran v. 7-Eleven, Inc.*, 506 F.3d 1191, 1195 (9th Cir. 2007). Here, the plaintiffs bear the burden of establishing standing's three constitutional requirements. *Lujan*, 504 U.S. at 561. First, they must establish that they suffered an injury in fact, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations, internal quotation marks, and footnote omitted). Second, they must establish "a causal connection between the injury and the conduct complained of." *Id.* Third, they must establish that it is "likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (citation and internal quotation marks omitted).

The district court concluded that Restrepo has standing because she has suffered, and continues to suffer, economic and other forms of injury because of the requirements imposed upon nonresident insurance agents by Nevada's countersignature law. 358 F. Supp. 2d at 982. The Commis-

sioner contends that Restrepo provided no evidence of actual economic injury, and specifically notes Restrepo's inability to firmly connect the amount of her compensation with the sale of products insuring Nevada risks. The Council argues that while Restrepo is a salaried employee, her overall compensation (which includes a bonus based on the growth and profitability of her office) is affected by section 680A.300's commission-splitting provision. In the end, we need not resolve the parties' dispute over Restrepo's alleged economic injury because on appeal the Council asserts an alternative injury, discriminatory administrative burdens placed on Restrepo because of her nonresident status. While the Commissioner argues that we should not consider this argument because the Council raises it for the first time on appeal, we may affirm summary judgment on any ground supported by the record. *Doran*, 506 F.3d at 1195 n.1.

**[1]** "It has long been clear that economic injury is not the only kind of injury that can support a plaintiff's standing." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262-63 (1977). "Impairments to constitutional rights are generally deemed adequate to support a finding of 'injury' for purposes of standing." *Doe v. Sch. Bd. of Ouachita Parish*, 274 F.3d 289, 292 (5th Cir. 2001). The relevant constitutional provision here is Article IV, § 2, which provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." "[O]ne of the privileges which the clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State." *Toomer v. Witsell*, 334 U.S. 385, 396 (1948). Accordingly, here, "the ability of a citizen in one state to act as an insurance [agent or broker] in another state must be considered a fundamental right or privilege protected by the privileges and immunities clause." *Silver v. Garcia*, 760 F.2d 33, 36 (1st Cir. 1985); *Council of Ins. Agents + Brokers v. Viken*, 408 F. Supp. 2d 836, 844 (D.S.D. 2005) (nonresident insurance agents and producers licensed in South Dakota have a fundamental right

or privilege to place insurance on terms of substantial equality with licensed resident agents).

**[2]** Section 680A.300 infringes on Restrepo's ability, as a licensed nonresident agent, to do business in Nevada on substantially equal terms with resident agents. It is undisputed that Restrepo is a resident of California, that she is licensed in Nevada as a nonresident agent, and that section 680A.300 treats her differently than resident agents because of her out-of-state residency. While section 680A.300 protects Restrepo's "free and unlimited right to negotiate contracts . . . if the policies, endorsements or evidence of those contracts covering properties or insurable interests in [Nevada] are countersigned by a resident agent," it also requires that "[e]very such policy or contract must be countersigned by a resident agent." Section 680A.300 precludes Restrepo from finalizing insurance contracts in Nevada without the countersignature of a resident agent. In effect, section 680A.300 creates two classes of insurance agents in Nevada, one class of licensed resident agents that can finalize insurance contracts, and a second class of licensed nonresident agents that cannot.

**[3]** Unfortunately for Restrepo, her California residency places her squarely within Nevada's second class of insurance agents. Despite her "free and unlimited right to negotiate contracts," Restrepo cannot do business on substantially equal terms with resident agents because she cannot finalize an insurance contract without the countersignature of a resident agent. The Commissioner argues that the impact on Restrepo, if she is impacted at all, is only minor, as Restrepo has no personal contact with the countersigning resident agents and that the only additional burden placed on her is having her staff mail the policies to obtain the resident agents' signatures. However, the Commissioner's argument misses the mark; Restrepo's lack of personal contact with the countersigning agent does nothing to diminish the fact that section 680A.300 prevents her from doing business in Nevada on substantially

equal terms with resident agents. Even if the Commissioner were right that the degree of Restrepo's injury should factor into our analysis, as noted in *United States v. Students Challenging Regulatory Agency (SCRAP)*, 412 U.S. 669 (1973), the Court has

> allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, a $5 fine and costs, and a $1.50 poll tax . . . . 'The basic idea that comes out in numerous cases is that an identifiable trifle is enough to fight out a question of principle; the trifle is the basis for standing and the principle provides the motivation.'

*Id.* at 689 n.14 (internal citations omitted). Here, because section 680A.300 precludes Restrepo from doing business in Nevada on substantially equal terms with resident agents, a right guaranteed to her by the Privileges and Immunities Clause, she suffers an injury which is "concrete," "actual," and amounts to more than an "identifiable trifle," thereby satisfying standing's injury in fact requirement.

**[4]** We similarly conclude that Restrepo satisfies standing's causation and redressability requirements. *Lujan*, 504 U.S. at 561. Section 680A.300 causes Restrepo's injury by precluding her from participating in Nevada's insurance market on substantially equal terms with resident agents, and a favorable decision invalidating the statute redresses that injury. Therefore, Restrepo has standing to challenge the constitutionality of section 680A.300, and having found standing, we do not consider whether the Council also has standing. *Leonard v. Clark,* 12 F.3d 885, 888 (9th Cir. 1993) ("The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others.").

### B. Mootness

The Commissioner also argues on appeal that Restrepo's claims are moot because they no longer present a live controversy. While we generally do not consider arguments raised for the first time on appeal, *S.E.C. v. Internet Solutions for Bus., Inc.*, 509 F.3d 1161, 1167 (9th Cir. 2007), we have an independent obligation to address whether a case is moot because it goes to the Article III jurisdiction of this court. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66-67 (1997); *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001).

[5] "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English*, 520 U.S. at 67 (internal quotation marks and citations omitted). "A claim is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. The basic question is whether there exists a present controversy as to which effective relief can be granted." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007) (internal quotation marks and citations omitted). "[T]he party moving for dismissal on mootness grounds bears a heavy burden." *Jacobus v. Alaska*, 338 F.3d 1095, 1103 (9th Cir. 2003) (internal quotation marks and citations omitted). "[D]ismissal of a case on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *Id.* at 1102-03 (internal quotation marks and citations omitted).

[6] The Commissioner argues that Restrepo's claims are moot because in May of 2004, her employer, ABD, acquired a Nevada-based insurance agency. This acquisition, the Commissioner contends, provides Restrepo with in-house countersignature services, thereby eliminating the possibility of any further injury to either Restrepo or ABD. However, "[d]espite

superseding events, an issue is not moot if there are present effects that are legally significant." *Id.* at 1104. Assuming, without deciding, that ABD's acquisition of a Nevada-based insurance company eliminates the possibility of economic harm to Restrepo and ABD, section 680A.300 still precludes Restrepo from participating in Nevada's insurance market on substantially equal terms with its resident agents. Restrepo remains unable to finalize an insurance contract without the countersignature of a resident agent. Therefore, despite the availability of an in-house resident agent that is willing and able to countersign policies negotiated by Restrepo, section 680A.300's effects remain legally significant and her claims are not moot.

## C.   Privileges and Immunities Clause of Article IV

As noted, the Privileges and Immunities Clause of Article IV provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." "While the Privileges and Immunities Clause cites the term 'Citizens,' for analytic purposes citizenship and residency are essentially interchangeable." *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (1988). The primary purpose of the Privileges and Immunities Clause "was to help fuse into one Nation a collection of independent, sovereign States." *Toomer*, 334 U.S. at 395. The clause "was intended to create a national economic union," *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 280 (1985), and "was designed to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *Friedman*, 487 U.S. at 64 (internal quotations omitted); *Toomer*, 334 U.S. at 395.

**[7]** "Like many other constitutional provisions, the privileges and immunities clause is not an absolute." *Id.* at 396. While it bars "discrimination against citizens of other States where there is no substantial reason for the discrimination

beyond the mere fact that they are citizens of other States . . . it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it." *Id.* Therefore, we examine claims that a residency classification offends the Privileges and Immunities Clause using a two-step inquiry. First, we decide whether the activity in question is "sufficiently basic to the livelihood of the nation . . . as to fall within the purview of the Privileges and Immunities Clause." *Friedman*, 487 U.S. at 64 (citations and internal quotation marks omitted). "Second, if the challenged restriction deprives nonresidents of a protected privilege, we will invalidate it only if we conclude that the restriction is not closely related to the advancement of a substantial state interest." *Id.* at 65 (citation omitted).

**[8]** In the first step of our inquiry, it is "[o]nly with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." *Baldwin v. Fish and Game Comm'n of Montana,* 436 U.S. 371, 383 (1978). As the court noted in *Silver*,

> There can be no doubt that insurance and occupations in the insurance industry are important to the national economy. Consequently, the ability of a citizen of one state to act as an insurance [agent or broker] in another state must be considered a fundamental right or privilege protected by the privileges and immunities clause.

760 F.2d at 36. Therefore, the ability of licensed nonresident agents and brokers to ply their trade in Nevada on substantially equal terms with resident agents falls within the purview of the Privileges and Immunities Clause. Section 680A.300 deprives licensed nonresident agents and brokers of this privilege by precluding them from finalizing insurance contracts without the countersignature of a resident agent, thereby satisfying the first step of our inquiry.

**[9]** In the second step of our inquiry, we ask whether section 680A.300 is "closely related to the advancement of a substantial state interest." *Friedman*, 487 U.S. at 64. A "substantial reason" for discrimination does not exist "unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." *Toomer*, 334 U.S. at 398. The Commissioner states that section 680A.300 protects Nevada's consumers and that Nevada benefits by having a record of all transactions so that it can collect its premium tax. According to the Commissioner, section 680A.300 protects Nevada's consumers by providing a local point of contact for policyholders, by providing a local agent that can offer advice on coverage issues, by providing a local agent to assist in the claims process, by protecting Nevada residents from unqualified or unlicensed insurance agents, and by giving consumers greater assurance that they will receive reputable and qualified services. However, as the Commissioner's contentions are not supported by the record, there is no support for a conclusion that licensed nonresident agents and brokers are a "peculiar source of evil" to either Nevada's consumers or its tax collection efforts; therefore, Nevada does not have a substantial reason to discriminate against them. *See Toomer*, 334 U.S. at 398. However, even assuming that licensed nonresident agents and brokers were a "peculiar source of evil," section 680A.300 also fails to survive the second step of our inquiry because it is not closely related to either consumer protection or tax collection.

**[10]** Section 680A.300 is not closely related to providing a "local" point of contact for the policyholder as a source of advice on coverage issues and to assist in the claims process. *See Barnard v. Thorstenn*, 489 U.S. 546, 553-554 (1989) (geographic isolation insufficient to justify discrimination against nonresidents); *Council of Insurance Agents + Brokers v. Gallagher*, 287 F. Supp. 2d 1302, 1312-13 (N.D. Fla. 2003) (same). The court confronted a similar argument in *Gallagher*, where Florida's Commissioner of Insurance sought to uphold the state's countersignature statute against a Privileges

and Immunities Clause challenge. *Id.* As the *Gallagher* court noted, "the notion that an agent cannot provide assistance outside his home state is nonsense; whatever may have been said when people traveled by horseback and communicated by regular mail, today people communicate by telephone and facsimile and e-mail and overnight courier . . . ; state boundaries pose no obstacle." *Id.* at 1312; *Council of Ins. Agents & Brokers v. Juarbe-Jimenez*, 363 F. Supp. 2d 47, 55 (D.P.R. 2005), *aff'd on other grounds*, 443 F.3d 103 (1st Cir. 2006). Here, too, just as in *Gallagher*, section 680A.300's disparate treatment of licensed nonresident agents and brokers is also over-inclusive. *Id.* at 1312-13. For example, section 680A.300 allows a "local" resident agent in Las Vegas, Nevada, to finalize an insurance contract with a consumer more than 400 miles away in Stateline, Nevada, while allowing a licensed nonresident agent or broker in South Lake Tahoe, California, to negotiate, but not finalize, that same contract with the consumer, even though the licensed nonresident agent/broker and consumer may be separated by nothing more than the Nevada-California state line. *Id.* This contradicts the Commissioner's argument that section 680A.300 allows Nevada's consumers to walk right into the office of the "local" countersigning resident agent with policy questions and concerns. Not only is the Commissioner's argument not supported by the record before us, it also flies in the face of all notions of modern business practices and commerce. "[E]recting a fence at the [Nevada] border does nothing to promote geographic proximity." *Id.* Therefore, section 680A.300 is not closely related to providing Nevada consumers with a "local" point of contact to provide advice and assist with claims.

Furthermore, section 680A.300 is neither closely related to protecting Nevada consumers from unqualified and unlicensed agents, nor assuring consumers that they will receive reputable and qualified services. In conformity with the well-established principle that residency does not equate with professional competence, nonresident producers of insurance (that are licensed for the same lines of authority in another

state) are exempt from completing both the state's education and written examination requirements, and becoming resident agents if they move to Nevada. *See Thorstenn*, 489 U.S. at 555; *Piper*, 470 U.S. 285 ("Nor may we assume that a nonresident lawyer-any more than a resident-would disserve his clients by failing to familiarize himself with the rules."); Nev. Rev. Stat. §§ 683A.241, 683A.291. There is no evidence in the record that licensed nonresident agents and brokers are inherently less trustworthy or less competent insurance professionals than Nevada's resident agents. *See Silver*, 760 F.2d at 38-39. In fact, Nevada's statutory exemption directly contradicts both that notion and the Commissioner's arguments that licensed nonresident agents and brokers are any less qualified than resident agents, and that consumers need any assurance of their qualifications. Therefore, section 680A.300 is not closely related to protecting Nevada's consumers from unqualified insurance agents and brokers.

Admittedly, Nevada has a valid interest in protecting its consumers from unlicensed agents. *See* Nev. Rev. Stat. § 683A.201 ("A person shall not sell, solicit or negotiate insurance in this state for any class of insurance unless he is licensed for that class of insurance."). However, here, the plaintiffs challenge the constitutionality of section 680A.300 because of its treatment of *licensed* nonresident agents and brokers, not *unlicensed* persons. Therefore, section 680A.300 is not closely related to protecting consumers from unlicensed agents.

**[11]** Finally, the Commissioner states that Nevada benefits by having a record of all transactions so that it can collect its premium tax. While Nev. Admin. Code § 680A.410 requires countersigning agents to "maintain complete records of countersignature transactions, including daily reports, correspondence, names of nonresident agents and brokers who wrote the policies, and evidence of fees and commissions charged," there is no indication in the record that the Commissioner cannot obtain any information needed by Nevada to collect its

premium tax from licensed nonresident agents and brokers in the first instance. Therefore, it appears that the Commissioner already has a less restrictive means of obtaining that information. As the *Piper* Court noted, "[i]n deciding whether the discrimination bears a close or substantial relationship to the State's objective, [we consider] the availability of less restrictive means." 470 U.S. at 284; *see also Viken*, 408 F. Supp. 2d at 844 (noting less restrictive means available to advance South Dakota's goals). Here, obtaining records directly from nonresident agents and brokers is less restrictive than requiring them to obtain the countersignature of a resident agent who must then maintain the same transaction records under section 680A.410. The Commissioner has direct control over licensed nonresident agents and brokers, as Nev. Rev. Stat. § 683A.281 requires every nonresident producer of insurance to "appoint the commissioner in writing as his attorney upon whom may be served all legal process," to agree "to appear before the commissioner pursuant to notice of hearing, show cause order or subpoena issued by the commissioner," and allows the commissioner to impose penalties on the licensee if he fails to appear. Again, modern technology and business practices make records in the possession of nonresident agents and brokers just as accessible as records in the possession of resident agents. Therefore, section 680A.300 is not closely related to the collection of Nevada's premium tax.

**[12]** In sum, section 680A.300 is unconstitutional under the Privileges and Immunities Clause because it discriminates "against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States . . . ." *Toomer*, 334 U.S. at 396. Having concluded that section 680A.300 violates the Privileges and Immunities Clause, we don't consider the plaintiffs' alternative argument under the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 403 (after concluding statute violated the privileges and immunities clause the Court did not consider an equal protection argument); *Friedman*, 487 U.S. at 63 n.* (same).

## IV.  Conclusion

Restrepo has standing because she suffers an injury, which is caused by section 680A.300, and which a favorable decision invalidating that provision redresses. Restrepo's claims are not moot because section 680A.300's effects on her remain legally significant. Section 680A.300 violates the Privileges and Immunities Clause because Nevada's discrimination against licensed nonresident agents is not closely related to a substantial reason for that discrimination beyond the mere fact that they are citizens of other states.

**AFFIRMED** and **REMANDED** for further proceedings on the injunction that was stayed pending appeal.