Opinion by Judge FRIEDMAN; Dissent by Judge GRABER.
*961 OPINION
FRIEDMAN, District Judge:
Commercial fishers in California are subject to a bevy of fees. For certain fees, however, non-residents are charged two to three times more than residents. Plaintiffs represent a class of non-resident commercial fishers who contend that California’s discriminatory fees violate the Privileges and Immunities Clause of the United States Constitution. Because California has failed to offer a closely related justification for its discrimination against non-residents, we agree with plaintiffs and therefore affirm the district court’s grant of summary judgment to the plaintiff class.
BACKGROUND
The named plaintiffs are commercial fishers residing outside California. They represent a class of non-residents who, since 2009, have purchased commercial fishing licenses, registrations, or permits from California and paid higher fees than residents. Plaintiffs sued Charlton Bon-ham, in his official capacity as the Director of the California Department of Fish and Game, alleging that the differential fees violate the Privileges and Immunities, and Equal Protection Clauses of the United States Constitution.
Plaintiffs challenge four specific fees: general commercial fishing license fees, commercial fishing vessel registration fees, Herring Gill net permit fees, and Dungeness Crab vessel permit fees. See Cal. Fish & Game Code §§ 7852, 7881, 8550.5, 8280.6. While the parties dispute the prevalence of Herring Gill and Dungeness Crab permits, it is undisputed that, at a minimum, non-resident commercial fishers must purchase the general license to fish in California waters and a vessel registration to do so from a boat they own or operate. See id. §§ 7852, 7881. In 2012-13, the relevant fees were as follows:
• Commercial fishing license: $130.03 for residents; $385.75 for non-residents;
• Commercial fishing vessel registration: $338.75 for residents; $1,002.25 for nonresidents;
• Herring Gill net permit: $359.00 for residents; $1,334.25 for non-residents;
• Dungeness Crab vessel permit: $273.00 for residents; $538.00 for nonresidents.
All four licenses would set a resident back $1,100.78, but a non-resident $3,260.25.
Following discovery, the parties filed cross-motions for summary judgment. The district court concluded that California had failed to demonstrate a genuine issue of material fact and granted summary judgment to the plaintiff class on its Privileges and Immunities Clause claim. The district court then entered final judgment as to plaintiffs’ Privileges and Immunities Clause claim pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.[1]
STANDARD OF REVIEW
We have jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment de novo. See Pac. Shores Props., LLC v. City of Newport Beach, 730 F.3d 1142, 1156 (9th Cir.2013). Viewing the evidence in the light most favorable to the State, we must decide whether there are any genuine disputes of material fact and whether the district court correctly applied the substantive law. See Olsen v. Idaho St. Bd. Of Med., 363 F.3d 916, 922 (9th Cir.2004).
*962 DISCUSSION
The Privileges and Immunities Clause provides that “[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.” U.S. Consti. art. IV, § 2, cl. 1. This clause “was designed ‘to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.’ ” Sup. Ct. of Va. v. Friedman, 487 U.S. 59, 64, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988) (quoting Paul v. Virginia, 75 U.S. (8 Wall.) 168, 180, 19 L.Ed. 357 (1869)); see also Toomer v. Witsell, 334 U.S. 385, 395, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948) (The Clause “was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy.”). The Clause thus “establishes a norm of comity” between residents and non-residents of a State, Austin v. New Hampshire, 420 U.S. 656, 660, 95 S.Ct. 1191, 43 L.Ed.2d 530 (1975), to create “a national economic union,” Council of Ins. Agents & Brokers v. Molasky-Arman, 522 F.3d 925, 934 (9th Cir.2008) (quoting Sup. Ct. of N.H. v. Piper, 470 U.S. 274, 280, 105 S.Ct. 1272, 84 L.Ed.2d 205 .(1985)).[2]
The Clause, however, “is not an absolute.” Molasky-Arman, 522 F.3d at 934 (quoting Toomer, 334 U.S. at 396, 68 S.Ct. 1156). “While it bars ‘discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States ... it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it.” Id. (quoting Toomer, 334 U.S. at 396, 68 S.Ct. 1156). We therefore employ a two-part test to determine whether disparate treatment violates the Clause. “First, the activity in question must be ‘sufficiently basic to the livelihood of the Nation’ ... as to fall within the purview of the Privileges and Immunities Clause.” Friedman, 487 U.S. at 64, 108 S.Ct. 2260 (quoting United Bldg. & Constr. Trades Council v. Mayor and Council of Camden, 465 U.S. 208, 221-22, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984)). “Second, if the challenged restriction deprives nonresidents of a protected privilege, we will invalidate it only if we conclude that the restriction is not closely related to the advancement of a substantial state interest.” Id. at 65, 108 S.Ct. 2260 (citing Piper, 470 U.S. at 284, 105 S.Ct. 1272). California contends that the differential license fees pass muster under both parts of this test. We disagree.
A
California does not dispute that plaintiffs’ right to pursue “a common calling is one of the most fundamental of those privileges protected by the Clause.” Camden, 465 U.S. at 219, 104 S.Ct. 1020; see also Toomer, 334 U.S. at 403, 68 S.Ct. 1156 (“Thus we hold that commercial shrimping in the marginal sea, like other common callings, is within the purview of the privileges and immunities clause.”). It instead argues that, in addition to demonstrating that the affected activity is protected, plaintiffs must make two additional showings.
First, California argues. that our decision in International Organization of Masters, Mates, & Pilots v. Andrews, 831 F.2d 843 (9th Cir.1987), requires plaintiffs to show that the differential fees exclude them, in whole or in part, from commercial fishing. This showing cannot be made, California claims, because the percentage *963 of non-resident commercial fishers in California has increased, not decreased. In Andreivs, we held that the Clause was not violated by a statute regarding cost of living wage adjustments because the statute was “designed to provide equity between the wages of [citizen] and non-[citizen] workers.” Andrews, 831 F.2d at 846. The statute in Andrews thus created equality, not inequality, and therefore did not run afoul of the Privileges and Immunities Clause because, we said, “the appellants ha[d] not shown that they are prevented or discouraged by the State from pursuing employment.” Id.
California contends that our choice of the words “prevented or discouraged” upset decades of precedent and added an exclusion requirement to the first part of the test. We disagree. As we recited in Andrews just two paragraphs before, the first step requires only that “we determine first whether [the statute] burdens” rights protected under the Clause. Id. at 845. An exclusion requirement would undermine the purpose of the Clause because permitting a State to freely discriminate against non-residents up to the point they are driven out would not “place the citizens of each State upon the same footing with citizens of other States.” Lunding v. N.Y. Tax Appeals Tribunal, 522 U.S. 287, 296, 118 S.Ct. 766, 139 L.Ed.2d 717 (1998) (quoting Paul, 75 U.S. (8 Wall.) at 180). And, to any extent that Andrews may have implied that a plaintiff must demonstrate exclusion from pursuing their common calling, the Supreme Court’s subsequent statement in Friedman makes clear that “[n]othing in [its] precedents ... supports the contention that the Privileges and Immunities Clause does not reach a State’s discrimination against nonresidents when such discrimination does not result in their total exclusion from the State.” 487 U.S. at 66, 108 S.Ct. 2260.[3]
Second, California argues that McBurney v. Young, — U.S. -, 133 S.Ct. 1709, 185 L.Ed.2d 758 (2013), the Supreme Court’s most recent Privileges and Immunities Clause decision, requires that plaintiffs show that the differential fees were enacted for a “protectionist purpose.” The Supreme Court in McBumey did note that prior cases “struck laws down as violating the privilege of pursuing a common calling only when those laws were enacted for the protectionist purpose of burdening out-of-state citizens.” Id. at 1715. California urges us to read that statement to mean that proof of a protectionist purpose always is required to meet step one of our privileges and immunities inquiry. We cannot accept that interpretation of McBumey.
When the Court determines that the Privileges and Immunities Clause does not apply at all, it says so. For example, in Baldwin v. Fish & Game Commission, 436 U.S. 371, 388, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978), the Court held that, because elk hunting was “not basic to the maintenance or well-being of the Union,” the state’s decision to charge non-residents more than residents for elk-hunting licenses “simply [did] not fall within the purview of the Privileges and Immunities Clause.” In McBumey, the Court rejected one of McBurney’s arguments — that Virginia’s law denied them “the right to access public information on equal terms with citizens” of Virginia — for similar reasons, holding that the Privileges and Immunities Clause did not “covert ] this broad right.” 133 S.Ct. at 1718.
*964 By contrast, with respect to McBurney’s common calling argument, the Court held that the Virginia law at issue did not “abridge [non-residents’] ability to engage in a common calling in the sense prohibited by the Privileges and Immunities Clause.” Id. at 1715 (emphasis added). The Court reached that conclusion because the statute had only an “incidental effect” on the pursuit of a common calling, and because the distinction it made between citizens and non-citizens had a “distinctly nonprotectionist aim.” Id. at 1716. This reasoning, along with the Court’s discussion of earlier cases involving statutes with protectionist purposes, is a part of step two of the inquiry, which requires the state to point to a “substantial reason[ ]” for the discrimination. Friedman, 487 U.S. at 67, 108 S.Ct. 2260. “Part and parcel to this analysis is determining whether [the state has] demonstrated a substantial factor unrelated to economic protectionism to justify the discrimination.” Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 97 (2d Cir.2003).
Requiring proof of a legislature’s protectionist purpose at the first step of the inquiry, as California urges, would negate the-second step’s burden on the state to provide a valid justification for the discrimination against non-residents. Moreover, an intent requirement would undermine the Clause’s purpose to “plac[e] the citizens of each State upon the same footing with citizens of other States,” Lunding, 522 U.S. at 296, 118 S.Ct. 766 (quoting Paul, 75 U.S. (8 Wall.) at 180), by mandating different outcomes depending upon a State’s motive. We therefore reject California’s invitation to read McBumey as a dramatic overhaul of the first step of the settled two-step inquiry.
To reiterate, contrary to California’s arguments, the first step of the Privileges and Immunities Clause inquiry asks only whether the challenged statute directly burdens a protected activity. It is undisputed that California’s commercial fishing license fees are significantly higher for non-resident fishers than for residents. And it is common sense that commercial fishing license fees directly affect commercial fishing. Those facts alone satisfy plaintiffs’ burden at the first step of the inquiry. See Toomer, 334 U.S. at 396, 68 S.Ct. 1156 (a statute that charged $25 to residents for commercial shrimping licenses, but charged $2,500 to non-residents “plainly and frankly discriminatefd] against non-residents” and thus satisfied the first step); Mullaney v. Anderson, 342 U.S. 415, 417-18, 72 S.Ct. 428, 96 L.Ed. 458 (1952) (holding that the Privileges and Immunities Clause “would bar any State from imposing” a $5 license fee on resident fishers and a $50 fee on .non-residents unless a State offered a substantial, closely related justification at the second step of the inquiry).
B
At the second step, the burden shifts to the State to demonstrate that “substantial reasons exist for the discrimination and [that] the degree of discrimination bears a close relation to such reasons.” Friedman, 487 U.S. at 67, 108 S.Ct. 2260.[4] To determine whether the *965 State’s proffered justifications bear a close relation to the discrimination, we must “consider[ ] whether, within the full panoply of legislative choices otherwise available to the State, there exist alternative means of furthering the State’s purpose without implicating constitutional concerns.” Id.
The Supreme Court has noted that “[t]he State is not without power ... to charge non-residents a differential which would merely compensate the State ... for any conservation expenditures from taxes which only residents pay.” Toomer, 334 U.S. at 398-99, 68 S.Ct. 1156. California argues that it is doing just that— merely compensating itself for expenditures on conservation and enforcement efforts from which non-residents benefit. But California claims that Toomer allows for inequality at step two and therefore any fee differential is permissible so long as the State does not “overcompensate” itself in the aggregate, which, according to California, means only that the amount collected from nonresidents cannot exceed their collective “fair share” of the State’s expenditures. These differential fees thus are permissible, according to California, because the total additional amount collected from non-residents (approximately $400,000) constitutes a mere 3% of the budget shortfall between costs and revenues (approximately $14.6 million) but nonresidents comprise approximately 11% of the commercial fishers in California.
We are unpersuaded. Although we agree that obtaining compensation for expenditures the State makes for conservation or enforcement is a permissible state objective, the additional fees charged to non-residents must bear a close relation to the “taxes which only residents pay.” Toomer, 334 U.S. at 399, 68 S.Ct. 1156; see also Molasky-Arman, 522 F.3d at 934 (noting that “a ‘substantial reason’ for discrimination does not exist ‘unless there is something to indicate that nonciti-zens constitute a peculiar source of the evil at which the statute is aimed’ ”) (quoting Toomer, 334 U.S. at 398, 68 S.Ct. 1156). In other words, a State may justify a differential fee by showing either that it is closely related to the costs of addressing a burden non-residents uniquely impose or that it approximates the amount in “taxes which only residents pay” towards the relevant State expenditures from which nonresidents also benefit. Toomer, 334 U.S. at 399, 68 S.Ct. 1156; see also Tangier Sound Waterman’s Ass’n v. Pruitt, 4 F.3d 264, 267 (4th Cir.1993) (Toomer permits state to discriminate against non-residents where state “establishes an ‘advancement of a substantial state interest’ as a reason for the. disparate treatment, and, in the facts of this case, evenly or approximately evenly distributes the costs imposed on residents and nonresidents to support those programs benefiting both groups.”). Such a differential would “bear[ ] a close relation to the achievement of [a] substantial state objective[ ],” Friedman, 487 U.S. at 70, 108 S.Ct. 2260, because it would address the particular evil non-residents present, unfairly benefiting from residents’ tax expenditures. It also would place nonresidents “upon the same footing with,” id. at 64, 108 S.Ct. 2260, or at least in “substantial equality” with California residents, Toomer, 334 U.S. at 396, 68 S.Ct. 1156, by forcing an individual non-resident who benefits from the State’s expenditures to contribute an amount substantially equal to that which an individual resident contributes across all fees and related taxes.
California does not claim, however' — -nor has it presented any evidence that shows — that the fee differential approximates the amount in taxes a resident contributes to the State’s expenditures related to commercial fishing. Mullaney, 342 U.S. at 418, 72 S.Ct. 428; see also Hicklin v. *966 Orbeck, 437 U.S. 518, 527, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) (“[T]he discrimination the [statute] works against nonresidents does not bear a substantial relationship to the particular ‘evil’ they are said to present.”). California alone bore the step two “burden of showing that the discrimination is warranted by a substantial state objective and closely drawn to its achievement.” Friedman, 487 U.S. at 68, 108 S.Ct. 2260. It failed to carry that burden, despite ample opportunity to develop and support its offered justification and “all the facts ... in [its] possession.” Mullaney, 342 U.S. at 418-19, 72 S.Ct. 428.
CONCLUSION
For the above reasons, we hold that California’s differential commercial fishing license fees, Cal. Fish & Game Code §§ 7852, 7881, 8550.5, and 8280.6, violate the Privileges and Immunities Clause. Charging non-residents two to three times the amount charged to residents plainly burdens non-residents’ right to pursue a common calling, in this case commercial fishing. Such discrimination violates the Privileges and Immunities Clause unless the State carries its burden to show “that such discrimination bears a close relation to the achievement of substantial state objectives.” Friedman, 487 U.S. at 70, 108 S.Ct. 2260. Although its stated objective, compensation for State expenditures for conservation or enforcement, is valid, California has failed to show that the differential fee charged to a non-resident is closely related to a resident’s share of the State’s expenditures.
AFFIRMED.

. The district court expressly did not reach or enter final judgment on plaintiffs' Equal Protection Clause claim. We therefore lack jurisdiction over that claim. See 28 U.S.C. § 1291.

. "While the Privileges and Immunities Clause cites the term 'Citizens,' for analytic purposes citizenship and residency are essentially interchangeable.” Friedman, 487 U.S. at 64, 108 S.Ct. 2260.

. Our conclusion is supported by the fact that, as the district court noted, our "most recent Privileges and Immunities Clause decision, Molasky-Arman, contains no discussion at all — at either step of the inquiry — of the extent to which the challenged law's increased burden on nonresidents led to any deterrence or exclusion.”

. California argues that the district court applied a purportedly different rule taken from the Supreme Court’s "tax” cases, as opposed to its "common calling” cases, and failed to consider California’s justifications for the discrimination. The Supreme Court, however, has employed the same two-step inquiry for both “tax” and "common calling” cases. Compare Friedman, 487 U.S. at 64-65, 108 S.Ct. 2260 (challenge to a residency requirement for admission to the State bar), with Lunding, 522 U.S. at 296-98, 118 S.Ct. 766 (challenge to a differential income tax deduction). The district court applied the correct test and properly considered California’s asserted State objectives.